**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                              No. 96-4795

FLEMING MACON PLEASANTS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                              No. 96-4796

JOHNNY MACON PLEASANTS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.                                                                              No. 96-4818

DOUGLAS W. PLEASANTS,
<u>Defendant-Appellee.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CR-96-21-F)

Submitted: October 31, 1997

Decided: December 8, 1997

Before MURNAGHAN and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Wade M. Smith, Melissa H. Hill, THARRINGTON SMITH, Raleigh, North Carolina; Joel Hirschhhorn, Brian H. Bieber, JOEL HIRSCH-HORN, P.A., Coral Gables, Florida, for Appellants. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Christine Witcover Dean, Assistant United States Attorney, Raleigh, North Carolina, for Appellee United States; William W. Plyler, MCMILLAN, SMITH & PLYLER, Raleigh, North Carolina, for Appellee Douglas Pleasants.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In these consolidated appeals, Appellant Fleming Pleasants ("Fleming") appeals his sentence to life imprisonment, imposed after a jury convicted him of one count each of conspiracy to possess with intent to distribute cocaine and marijuana and criminal forfeiture. Fleming challenges whether the indictment against him should have been dismissed because it constituted a breach of a prior plea agreement, whether the district court erred by denying his motion for a new trial, whether the district court erroneously calculated the amount of drugs attributable to him, and whether the district court erred by enhancing his base offense level under the Sentencing Guidelines[1] for obstruction of justice. Appellant Johnny Pleasants ("Johnny") appeals his 396-month sentence imposed after he pled guilty to one count each of engaging in a continuing criminal enterprise and criminal for-

_____

[1] **U.S. Sentencing Guidelines Manual** § 3C1.1 (1995).

2

feiture. Johnny challenges whether the district court erred by denying his motion for a downward departure based on poor family upbringing, whether the district court erred by enhancing his base offense level for obstruction of justice, and whether the district court's calculation of his criminal history points amounted to impermissible "triple counting." Finally, the Government appeals the district court's order granting Co-Defendant Douglas Pleasants's ("Douglas") motion for a new trial. Finding no reversible error in any of the cases, we affirm.

Fleming and Douglas Pleasants are brothers, and Johnny is Fleming's son. For approximately fifteen years, the three men operated a major drug ring in North Carolina.[2] The record discloses that Fleming was the leader of the conspiracy, Johnny handled the daily operations, and Douglas acted primarily as a courier. Johnny pled guilty prior to trial (without a plea agreement), and Fleming and Douglas proceeded to trial and were tried and convicted together.

Fleming asserted at trial that the indictment against him must be dismissed because it violated the terms of a prior plea agreement. In 1986, Fleming, Johnny, and Douglas were indicted on several drug and obstruction charges. The offenses in question centered on the storage of over 800 pounds of marijuana in a co-conspirator's shed and Appellants' efforts to obstruct the resulting investigation. The indictment covered the period from September 1984 through January 1986. Pursuant to the terms of a plea agreement, Fleming pled guilty to one count of obstructing a criminal investigation. In the plea agreement, the Government agreed that "[n]o new charges arising from information known to the Government by the date of this agreement [April 21, 1986] will be sought by the Government." Fleming asserts in the present case that the Government breached this portion of the plea agreement when it indicted him for a conspiracy which allegedly operated from 1981-96.

We find Fleming's assertion meritless. The 1986 indictment dealt with two discreet events: the storage of marijuana in a shed and the attempt to impede the ensuing criminal investigation. The 1996 indictment covered a much broader conspiracy, and it did not allege

_____

[2] The district court attributed approximately 209 kilograms of cocaine and 705 kilograms of marijuana to the conspiracy.

3

any facts associated with the 1986 indictment. In addition, the Government presented evidence that it did not learn the full scope of the conspiracy until agents interviewed several witnesses in 1991. Therefore, we find that the 1996 indictment was based on information the Government obtained in 1991 and not on information it had as of April 1986. Since we find that there was no breach of the prior plea agreement, we decline to address the Government's claim that Fleming waived this issue at trial when he agreed to the district court's order that the Government could only present evidence of post-1986 conduct.

Fleming's motion for a new trial was based on the alleged perjured testimony of Government witness James Clayton Bell. Bell testified that he and his drug partner from Florida made numerous trips into South Carolina in the early 1980's to sell drugs. Bell stated that he and his partner sold drugs to Douglas on at least five occasions. Bell further testified that on at least one occasion, he observed another person in the car with Douglas, but he could not identify the person.[3] At no time did Bell offer any direct testimony against Fleming, nor did Fleming's counsel cross-examine Bell.

Shortly after trial, another Government witness ("Dorsey") wrote a letter to the prosecutor asserting that Bell gave false testimony because he never met Douglas. Dorsey claimed that Bell "purchased" his testimony from another inmate in the hope that he (Bell) would receive a more lenient sentence. Both Douglas and Fleming filed motions for a new trial. The district court granted Douglas' motion but denied Fleming's. Bell continues to assert that his testimony was truthful.

To receive a new trial based on newly discovered evidence, Fleming must show that: (1) the evidence was in fact newly discovered; (2) despite his due diligence, he was unable to discover the evidence prior to trial; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such

_____

[3] Fleming asserts that since he was the only other person on trial, the jury could not help but infer that he was the other person in the car with Douglas. We reject this assertion as speculative and unsupported by the evidence.

4

a quality that he would probably be acquitted at a new trial. United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995). This court reviews the district court's decision not to grant a new trial for an abuse of discretion, and we find no such abuse here. Id. Since Bell did not testify against Fleming, and several other witnesses did, we find that Fleming failed to satisfy his burden of proving that a new trial would probably result in an acquittal.

Fleming asserts that the district court erred in using the above test and that it should have applied the more lenient test used to analyze cases where the witness recants his testimony. See United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976). We reject this assertion for the simple reason that Bell never recanted his testimony. Fleming urges us to adopt the First Circuit's holding in United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989) (suggesting that the test applies "in cases in which the new evidence demonstrates that the testimony in question was deliberately false"). We decline to do so in this case because it was never conclusively established that Bell's testimony was in fact false.

Fleming challenges the amount of drugs attributed to him on four grounds. First, he asserts that the district court failed to make a specific finding on his objection to the quantity of drugs attributed to him. Second, he claims that the court relied on information it considered unreliable as to Johnny and Douglas. Third, he contends that the court relied on prior unsworn statements which conflict with witnesses' trial testimony. Finally, Fleming states that the court relied on transactions not linked to him. For the reasons that follow, we find these allegations meritless.

The presentence report ("PSR") held Fleming accountable for slightly over 209 kilograms of cocaine. Fleming objected to this amount, claiming he should only be held liable for approximately 46 kilograms of cocaine. However, Fleming failed to provide evidence supporting this figure. We reject Fleming's assertion that the district court failed to rule on his quantity objections. The PSR contained a very detailed chart showing quantities of drugs attributable to Fleming and their sources. Fleming bore the burden of showing that these amounts were inaccurate, and his conclusory allegations failed to satisfy this burden. See United States v. Terry, 916 F.2d 157, 162 (4th

5

Cir. 1990) (mere objections alone are insufficient). We find that the district court implicitly rejected Fleming's objections when it accepted the drug amounts contained in the PSR less the pre-1986 amounts and sentenced Fleming accordingly.

Fleming asserts that the district court erred in its calculation of the amount of drugs attributable to him because it relied on amounts allegedly found unreliable as to Douglas and Johnny. We find this assertion factually incorrect. The amount Fleming claims was found unreliable in Douglas' case centers around Bell's allegedly false testimony. However, the court subtracted the amount concerning Bell from the 209 kilograms because the transactions occurred prior to 1986. Therefore, Fleming was never held liable for the amount of drugs attributable to Bell, and we find his objection to this amount meritless.

Johnny took three polygraph examinations in which he denied having any direct dealings with Bell and two other witnesses. The district court accepted Johnny's proffer that his answers on the examinations were true and subtracted the amounts attributable to these witnesses from the amount attributable to Johnny. Contrary to Fleming's assertions, the court never made any findings concerning the reliability of these witnesses or ever reached any conclusion that the amounts attributed to them were not properly attributable to the conspiracy as a whole. Accordingly, we find that Fleming failed to satisfy his burden of showing that the amounts attributed to these witnesses in the PSR, with the exception of pre-1986 amounts, was inaccurate.

Finally, we reject Fleming's claims that the court relied on prior unsworn statements which conflicted with witnesses' trial testimony and on transactions not linked to him. While some of the drug amounts in the PSR are based on out-of-court interviews with the witnesses, the probation officer is authorized to rely on these interviews. Moreover, while some of the transactions were not mentioned during the witnesses' trial testimony we do not find that this creates a conflict in the evidence. The record suggests this was simply a function of the questions asked by counsel.

We also conclude that the district court properly increased Fleming's base offense level for obstruction of justice pursuant to USSG

6

§ 3C1.1 based on threats he made to two DEA special agents following his detention hearing. Taken in context, we find that the statements in question were clearly threatening. Both agents were witnesses against Fleming. More importantly, Fleming's nephew, David Pleasants, who was also a member of the conspiracy, recently attempted to hire someone to murder one of the agents in a manner consistent with Fleming's threats.

Johnny moved for a downward departure on two main grounds: (1) that he provided substantial assistance; and (2) that he was dominated by his father and raised in an immoral environment. The district court initially stated that it believed only the Government could make such a motion. However, defense counsel immediately explained that the motion was filed pursuant to USSG § 5K2.0, which cleared up the misunderstanding, and the court heard argument on the motion. We find that the district court's decision to hear argument shows that it recognized its authority to depart under USSG § 5K2.0, but that it declined to do so. As a result, the court's decision not to depart is not reviewable.**4**

The district court enhanced Johnny's base offense level by two levels pursuant to USSG § 3C1.1 for threats he made to a Government witness. Johnny contends that the district court erred in applying this enhancement because it relied on hearsay testimony in deciding that he threatened the witness. This issue was resolved against Johnny in United States v. Puckett, 61 F.3d 1092, 1095 (4th Cir. 1995).

Johnny also challenges the district court's assessment of six criminal history points for the same prior conviction. Johnny pled guilty to tampering with a witness in 1986 and was sentenced to six years' imprisonment. He was paroled in 1988 and released from parole in 1992. Pursuant to USSG § 4A1.1(a), the district court assessed three criminal history points for the 1986 conviction. The court also assessed two criminal history points pursuant to USSG § 4A1.1(d) and one criminal history point pursuant to USSG§ 4A1.1(e). Johnny concedes that the district court properly applied the Guidelines as written. However, he asserts that assessing six criminal history points for the same conviction amounts to impermissible"triple counting."

_____

**4 See United States v. Bayerle**, 898 F.2d 28, 30-31 (4th Cir. 1990).

7

This court resolved this issue against Johnny in <u>United States v. Crawford</u>, 18 F.3d 1173, 1179-80 (4th Cir. 1994), and we reject Johnny's attempts to distinguish <u>Crawford</u> from the case at bar.

Finally, we affirm the district court's order granting Douglas's motion for a new trial. We find that the district court did not abuse its discretion in finding that this case qualifies as one of the rare exceptions in which justice requires the grant of a new trial based on newly discovered impeachment evidence.[5]

Accordingly, we affirm Fleming's and Johnny's convictions and sentences and the district court's order granting Douglas' motion for a new trial. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

_____

[5] **<u>See United States v. Custis</u>**, 988 F.2d 1355, 1359 (4th Cir. 1993).

8